UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,          :
                                                         :
         -against-                              :     **OPINION AND ORDER DENYING**
                                                         :     **DEFENDANT'S MOTION TO**
SHELDON DUVALL SATCHEL,       :     **SUPPRESS STATEMENTS**
a/ka/ "Pep,"                                      :
                                                         :     06 Cr. 790 (AKH)
                       Defendant.     :
------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

        On August 22, 2006, Postal Inspector David Comer and Special Agent Joseph Kaecker interviewed defendant Sheldon Duvall Satchel without first advising him of his rights as prescribed in Miranda v. Arizona, 384 U.S. 436 (1966). In this opinion and order I consider whether statements made by Satchel during the course of that interview should be suppressed as the product of custodial interrogation.

**Background**

        The facts relevant to this motion are not disputed. In August of 2006, a representative of American Express reported unauthorized credit card activity to the United States Postal Inspection Service ("USPIS"). Inspector Comer commenced an investigation and discovered that someone had made unauthorized Internet purchases of diet food products in the name of "SDS Resale" for delivery to an address in the Bronx. Comer also learned that unauthorized purchases in the amount of $2,025 had not yet been delivered to the Bronx address. He arranged for those products to be delivered to the USPIS so that he could make a controlled delivery of those products.

        To prepare for the controlled delivery, Inspector Comer investigated the address that SDS Resale had supplied over the Internet, 750 East 179th Street, Apt 8B, and determined

1

that it was occupied by defendant Satchel.  On August 22, 2006, Comer dressed as a postal carrier and brought the diet food products to the address, accompanied by a team of agents.  He attempted the delivery alone, while the supporting agents waited nearby.  Inspector Comer rang the bell to Satchel's apartment and announced himself as a postal carrier.  According to Inspector Comer's testimony, Satchel initially responded "yes" when asked "you're SDS Resale?" but then refused to accept the packages, saying that some other "guy ordered them" and that he "didn't know who ordered" them.  See Tr. 31–32 (Mar. 26, 2007).  Comer returned to his postal truck and contacted the U.S. Attorney's Office, which recommended that the agents interview Satchel.

Five agents entered the apartment building dressed in plain clothes with their badges hanging around their necks, identifying them as members of the Secret Service or Postal Inspection Service, to locate Satchel.  Tr. 32–33.  Each was armed, but his weapon was not visible.  Tr. 110.  Agent Kaecker found the suspect in the laundry room of the apartment building and asked Satchel to accompany him into the lobby.  Inspector Comer joined them, and told Satchel that he wanted to talk to him outside the lobby "so that his neighbors wouldn't know what is going on."  Satchel replied "it doesn't matter because my neighbors already know that something is going on by all you people being here."  Tr. 38.  Comer reiterated his desire to move away from the public lobby, and Satchel agreed to follow him into the adjacent laundry room.  Tr. 38.

Inspector Comer, Agent Kaecker, and four other officers accompanied Satchel into the laundry room, which was otherwise unoccupied.  Tr. 38–39.  Comer and Kaecker sat with Satchel at a rectangular table along one wall of the room, while the other agents stood by the door through which they had entered.  Satchel sat at the end of the table, near an emergency door leading to the outside of the building.  Tr. 43, 46.  Comer and Kaecker sat along the long

2

side of the table, at a right angle to Satchel between Satchel and the door leading to the lobby. 46–47.  Inspector Comer told Satchel that he was not under arrest, and that he was "free to go," but he might find it in his interest to talk to the agents:

> I said to Mr. Satchel that there were things that we needed to talk about, but I said you're not under arrest, you're free to go at any time, but I think it would be in your best interest to talk to us at this point because obviously you know by now I'm not just a postal carrier, I'm actually a postal inspector, and this gentleman here … is a Secret Service agent.

Tr. 47.  Inspector Comer further testified that "about ten to fifteen seconds into the conversation" Satchel stated that "all these cops around him" were making him nervous.  Tr. 48–49.  Comer asked the officers to step outside the laundry room, and all but one left.  Tr. 48.

   Over the course of the next three or four minutes, Inspector Comer and Agent Kaecker asked Satchel questions about SDS Resale and deliveries.  Then Agent Kaecker asked Satchel if he knew who "James" was, and Satchel responded, "James is my brother."  Kaecker then asked if Satchel knew who "Pep" was and Satchel again responded affirmatively, saying "Pep, that's me, oh, [expletive]."  Tr. 50.  Inspector Comer testified that Satchel then asked whether he was under arrest and Comer said that he was not.  Satchel asked if he was free to go, and Comer replied, "Yes, you're free to go, I told you that from the beginning."  Tr. 51.  Satchel then announced that he was leaving, and rose to leave the laundry room.  As he was leaving, Comer asked Satchel where he was going, and Satchel indicated that he was going to his apartment to get something to drink.  Tr. 52.

   Defendant Satchel did not return to his apartment.  Instead, he left the building and walked into and out of a bodega, a hospital, and a bus while the agents trailed him.  An estimated twenty minutes after he left the building, agents placed him under arrest.  An indictment and, eventually, this motion, followed.  I held an evidentiary hearing on March 26, 2007 at which Inspector Comer and Agent Kaecker testified, and ruled that the agents had

3

probable cause to arrest Satchel at the time Inspector Comer attempted the controlled delivery. See Tr. 193–95.  I reserved decision, however, on whether Satchel's statements to Comer and Kaecker, which admittedly preceded any Miranda warnings, were admissible at trial.  For the reasons stated below, I hold that Satchel was not in custody when he made the statements at issue, and deny his motion to suppress.

## Discussion

### I. Standard of Review

Like the facts of this motion, the parties do not dispute the applicable standard of review, and cite the same cases.  In abbreviated form, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  Miranda, 386 U.S. at 444.  The "procedural safeguards" are, of course, the familiar Miranda warnings.  Here, there is no question that Inspector Comer and Agent Kaecker asked Satchel questions, and that Satchel gave responsive answers—thus his statements stemmed from "interrogation."  Whether he was in "custody" is not so obvious.

To determine whether a person was in custody, the court examines all of the circumstances relating to the ultimate question of whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  United States v. Newton, 369 F.3d 659, 670 (2d Cir. 2004).  Such arrest occurs "when, in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave."  Capaneria v. Reid, 891 F.2d 1014 (2d Cir. 1989).  The Second Circuit has identified factors relevant to this inquiry; they include "whether a suspect is or is not told that [he] is free to leave; the location and atmosphere of the interrogation; the

4

language and tone used by the police; whether the suspect was frisked or patted down; and the length of the interrogation.  Tankleff v. Senkowski, 135 F.3d 235, 244 (2d Cir. 1998).  And the inquiry is objective—"[t]he test for determining whether [a suspect] was in custody is whether a reasonable person in the defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."  United States v. Ali, 68 F.3d 1468, 1472 (2d Cir. 1996).

## II.     Analysis

By their motion papers, each side presents a nearly identical recitation of facts, with great fidelity to the hearing transcript, and a nearly identical recitation of law, but each asks the Court to reach an opposite conclusion.  The defendant argues that on the facts presented, no reasonable person would have felt "free to leave," while the government argues that the same facts "amply demonstrate" that the defendant was free to leave, and was so advised.

Most of the cases decided in this Circuit hold that a defendant interviewed for a brief period of time on familiar territory, such as his home or apartment building, who has been told that he is "free to leave," who has not been patted down or frisked, who has not observed officers brandishing weapons, and who was not threatened with arrest, is not in custody within the meaning of Miranda and its progeny.  See e.g., United States v. Mitchell, 966 F.2d 92, 99 (2d Cir. 1992) (finding no custodial interrogation where investigator interviewed suspect in his home; admonition not to lie and resulting nervousness did not tend to establish that suspect was not free to leave); United States v. Venkataram, 2007 U.S. Dist. LEXIS 4389 (S.D.N.Y. 2007) (finding no custodial interrogation where defendant "had not been searched or frisked … maintained custody of her cell phone … no handcuffs were shown to, or placed on, her … was not confronted with a gun … was never told that she could not leave or that she was under

5

arrest"); United States v. McCallister, 2001 U.S. Dist. LEXIS 18 (S.D.N.Y. 2001) (finding no custodial interrogation where defendant "was not told that he could not leave [and] the location of the interrogation was defendant's apartment"). A reasonable person would have understood that his freedom of action had not been "curtailed to a degree associated with formal arrest." Newton, 369 F.3d at 670; see also Tankleff, 135 F.3d at 244 (finding custodial interrogation where defendant detained for over two hours and subjected to increasing hostile questioning). Although Inspector Comer and Agent Kaecker, along with four other officers accompanied Defendant into the laundry room, they did not use or threaten or suggest force, the made no threats, and they did not give orders. In my opinion, a reasonable person in Defendant's position would not have considered the interview to be an arrest, and indeed, Satchel did not so consider it, having left the building approximately eight minutes into the interview. I hold that Satchel was not in custody within the meaning of Miranda and its progeny when he made the statements at issue in this motion.

## Conclusion

For the foregoing reasons, Defendant's motion to suppress is denied. The parties shall appear, as scheduled, for a pretrial conference on May 14, 2007 at 10:30am.

SO ORDERED.

Dated: May __11__, 2007
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

6